JUDGE NATHAN

15 CV 02983

Walter-Michael Lee (WL 6353)
Maja Szumarska (MS 0208)
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
Attorney for Plaintiff

RECEIVED
APR 17 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELEKTRA PRINTZ GORSKI, an individual,

Plaintiff,

v.

WHOLE FOODS MARKET, INC., and
WHOLE FOODS MARKET GROUP, INC.

Defendants.

CASE NO.

**COMPLAINT**

Plaintiff Elektra Printz Gorski ("Gorski") through her attorneys, complaining of defendants Whole Foods Market, Inc. and Whole Foods Market Group, Inc. ("Defendants") hereby alleges as follows:

## STATEMENT OF THE CASE

1.     This is a suit by Gorski against Defendants for injunctive relief, statutory damages, treble damages and/or profits, compensatory damages, pre-judgment interest, attorneys' fees, investigators' fees and costs for trademark counterfeiting, trademark infringement and unfair competition. Defendants are being sued as a result of their willful and unlawful use, sale, offers for sale, creation, distribution, promotion and advertisement of merchandise bearing counterfeits and infringements of Gorski's federally registered trademarks.

1

2.      Defendants approached Gorski with a business proposition to co-brand Whole Foods Market brands with her "Lettuce Turnip the Beet" brand. After Gorski denied such a proposition, Defendants willfully and maliciously ignored Gorski's legal rights and chose to exploit Gorski's trademarks to brand in-store events and authorized the creation and distribution of merchandise bearing counterfeits and infringements of Gorski's trademarks without her consent.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the federal trademark claims asserted in this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

4.      Defendants are subject to the Court's jurisdiction because it does business in this District.

5.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) because of Defendants' systematic business activity within this District and because a substantial part of the events occurred in this District as this is where Gorski does significant business and developed the trademarks at issue.

## THE PARTIES

6.      Plaintiff Elektra Printz Gorski is an individual who resides in Baltimore, Maryland.

7.      Upon information and belief, Defendants are Delaware corporations doing business in New York and throughout the United States. Defendants operate eight (8) retail locations in this District alone.

<u>**FACTUAL ALLEGATIONS**</u>

**A.  Gorski's Creation of LETTUCE TURNIP THE BEET**

8.      Gorski graduated from the Fashion Institute of Technology ("FIT") in New York in 2007, winning the famed Critic's Award as one of the most promising designers in her class. She has taken advanced silkscreen classes at FIT and the School of Visual Arts (SVA) from 2006 to 2013.  She is a designer and artist who is widely considered a master printer among her industry peers who have printed for Andy Warhol and Robert Rauschenberg and is now a Critic for FIT.

9.      In 2011, Gorski created the LETTUCE TURNIP THE BEET mark ("LTTB Mark") and began to use the mark on merchandise as a source identifier for her brand (the "LTTB Brand").

10.      In or about June 2011, Gorski began to sell merchandise bearing the LTTB Mark in SoHo, NYC.

11.      In or about August 2011, Gorski began to sell merchandise bearing the LTTB Mark on the following ecommerce websites: etsy.com ("Etsy") and supermarkethq.com ("Supermarket"). The LTTB Mark on a t-shirt and tote bag is seen below.

 

12.     On October 3, 2011, Gorski filed an application for trademark registration for the LTTB Mark.   On March 5, 2013, the USPTO issued Registration Number 4,297,108 for International Classes 016, 018, and 025for the LTTB Mark for the following goods and services: "Paper for wrapping and packaging"; "tote bags"; and "[w]earble garments and clothing, namely, shirts."

13.     On May 10, 2013, Gorski filed a second application for a trademark registration for the LTTB Mark.   On December 24, 2013, the USPTO issued Registration Number 4,454,801 for International Class 035 for the LTTB Mark for the followings goods and services: "On-line retail store services featuring clothing, accessories and art."   A copy of the printout from the USPTO online database reflecting these two aforementioned registrations is attached hereto as **Exhibit A.**

14.     On January 2, 2014, Gorski filed a third application for a trademark registration for the LTTB Mark in International Class 041 for "entertainment services, namely, arranging and conducting special events for social entertainment and philanthropic purposes". The registration is currently pending.

15.     When used together, the individual words of the LTTB Trademark are arbitrary and fanciful, and entitled to the highest level of protection.

16.     Gorski has expended substantial time, effort and money in developing a brand image for the LTTB Brand including the development and marketing of its LTTB Mark.   As a result, Gorski has received overwhelming praise from and attention for the LTTB Brand.

17.     The LTTB Brand markets itself as "Especially popular with vegetarians, vegans, CSA members, Ag students, farmers, chefs, dietitians, juicing fanatics, graphic designers, advertising directors, animators, musical theatre folks, music industry execs, teachers, DJs,

4

dancers, choreographers, yoga enthusiasts, musicians, musical festival attendees, gamers, geeks, hipsters, academics, and beet lovers!"

18.     Indeed, the LTTB Brand has been popular in the food, music and art industries. For example, on August 26, 2012, well-known singer-songwriter Jason Mraz wore a t-shirt bearing the LTTB Mark at a concert.  A true and accurate screenshot of Jason Mraz wearing the LTTB Brand is depicted below:



19.     Similarly, as seen on Madonna's Facebook page, Rich Talauega, choreographer to Madonna and Chris Brown, wears a bearing the LTTB Mark at a rehearsal for the 2012 Super Bowl half-time show.  A true and accurate screenshot of Rich Talauega wearing the LTTB Brand is depicted below:



20.    In or about February 2013, *Pregnancy and Newborn* magazine featured Gorski's baby organic bodysuit bearing the LTTB Mark in its magazine as a recommended product.

21.    In August 2013, Madison Hildebrand wore a t-shirt bearing the LTTB Mark on *Million Dollar Listing Los Angeles*, a television series on Bravo.  A true and accurate screenshot of Madison Hildebrand wearing the LTTB Brand is depicted below:



22.    In December 2013, Gorski's products were featured as a top product in the 2013 Pinterest Holiday Gift Guide on pinterest.com.

23.    In June 2015, *DJ Mag* will feature Gorski's shirts bearing the LTTB Mark in its magazine as a recommended product.

24.     As a result of Gorski's efforts, the LTTB Brand has become a social media sensation across the United States and the LTTB Mark has acquired secondary meaning.

25.     To date, Gorski has expended tens of thousands of dollars in promoting, advertising and marketing under the LTTB Brand.

26.     Currently, Gorski has 8,422 admirers and has sold at least 23,343 items on Etsy. Gorski's customers have given her a five-star rating, the highest rating available on the Etsy website.

27.     Based on Gorski's extensive advertising, sales and the wide popularity of Gorski's products, the LTTB Mark is now famous and has been famous since well prior to the activities of the Defendants complained of herein.  The LTTB Mark acquired secondary meaning so that any product or advertisement bearing such marks is immediately associated by consumers, the public and the trade as being a product or affiliate of Gorski.

28.     Gorski has gone to great lengths to protect and enforce the LTTB Mark.

**B.  Defendants' Infringing Activities**

29.     Gorski hereby incorporates all prior allegations by reference.

30.     In or about November 2013, Defendants contacted Gorski through Etsy with a request to purchase 5,000 shirts bearing the LTTB Mark for an employee appreciation event. Defendants also expressed a desire to enter into a co-branding arrangement with Gorski.

31.     In compliance with Gorski's great efforts to protect the integrity of the LTTB Brand, Gorski refused to enter into any type of co-branding agreement with Defendants and did not sell any merchandise to Defendants bearing the LTTB Mark. Gorski did not want the LTTB Brand associated with Defendants.

32.     Despite Gorski's clear refusal to co-brand with Defendants, and Defendants knowledge of Gorski's rights to the LTTB Mark, Defendants began using the LTTB Mark in association with its stores and special events held at Defendants' stores.

33.     As alarming, Defendants sourced or privately manufactured, and then distributed at least three (3) separate pieces of merchandise (shirts, wristbands, and tote bags) bearing counterfeits and infringements of the LTTB Mark without Gorski's permission.

34.     Defendants unlawfully exploited the LTTB Mark without authorization from Gorski with the intent to confuse the public to believe that they are authorized and/or endorsed by Gorski.  Defendants' unauthorized conduct is clearly willful.

35.     On or about February 18, 2015, Gorski discovered tote bags bearing marks confusingly similar to the LTTB Mark for sale on the website eBay.com ("eBay").  Defendants' attached their own tags and logos to these tote bags. . A picture of this style tote bag can be seen below:




36.     On or about March 7, 2015, a customer notified Gorski that Defendants are offering for sale shirts bearing counterfeits and infringements of the LTTB Mark at its store located in Virginia Beach, Virginia.  A picture of this style t-shirt can be seen below:



37.     Due to this egregious and unauthorized counterfeiting and infringement, on or about March 7, 2015, Gorski sent a cease and desist letter via email to Defendants demanding that they immediately cease their unauthorized use of the LTTB Mark.

38.     Also, Gorski received several communications from customers confusing the illicit merchandise sold at Defendants' retail stores with the LTTB Brand.

39.     Despite this cease and desist letter, Defendants' unauthorized activities concerning the LTTB Mark continued.

40.     On or about March 12, 2015, a customer notified Gorski that Defendants were actively selling shirts bearing counterfeits and infringements of the LTTB Mark at its Durham and Cary, North Carolina stores. A picture of this style shirt can be seen below:




41.     One week after receiving the cease and desist letter, on or about March 14, 2015, Gorski visited five (5) of Defendants' stores in North Carolina and confirmed that four (4) of these stores either were offering for sale and/or offered for sale merchandise bearing counterfeits and infringements of the LTTB Mark.

42.     Upon information and belief, Defendants were also selling merchandise bearing counterfeits and infringements of the LTTB Mark at its stores located in several other States.

43.     On or about March 27, 2015, Gorski received an email response to her cease and desist letter from counsel for Defendants, wherein Defendants conceded their unauthorized activity concerning the LTTB Mark ("Defendants' Email").

44.     In Defendants Email, Defendants admit to selling eighteen (18) shirts bearing the LTTB Mark, or a mark substantially similar thereto, at its store "in one" Virginia Beach, Virginia location. Defendants further alleged that, "no other products bearing the phrase 'Lettuce turnip the beet' were sold or offered for sale by Whole Foods Market."

45.    These statements contained in Defendants' Email are not accurate.

46.    Gorski has purchased and/or received information that Defendants distributed its illicit merchandise in at least nine (9) different locations and not just the one (1) location that Defendants claim.

47.    In Defendants' Email, Defendant further admit to selling 16,970 tote bags bearing the LTTB Mark, or a mark substantially similar thereto, in "limited regions" for the total sales amount of $56,990.64.

48.    In Defendants' Email, Defendants further admit to providing its employees with shirts bearing the LTTB Mark, or a mark substantially similar thereto, in "limited Whole Foods Market stores."  Further, Gorski discovered that the LTTB Mark was used in association with in store events held at least three (3) of Defendants' retail locations.  Copies of these ads are hereto attached as **Exhibit B** and incorporated herein by reference.

49.    Defendants provided LTTB Brand merchandise to its employees and used the LTTB Mark in association with in store events despite Gorski explicitly informing Defendants, in November 2013, that she refused to co-brand with them.  This did not stop Defendants from its unauthorized and willful activities.

50.    In Defendants' Email, Defendants further admit to distributing wristbands bearing the LTTB Mark, or a mark substantially similar thereto, at one of its stores to its customers.

51.    In Defendants' Email, Defendants' counsel further states: "At this point, all stores have been instructed to pull all products bearing the phrase 'Lettuce turnip the beet,' or 'Turnip the beet' and we've received confirmation that this has been done."

52.    This statement contained in Defendants' Email was not accurate.

53.    Despite assurances from Defendants' counsel, that the infringing merchandise was no longer being offered for sale, it is still being offered for sale at Defendants' stores.

54.    On March 29, 2015, two separate customers purchased t-shirts bearing counterfeits and infringements of the LTTB Mark from Defendants' store located in Charlotte, North Carolina.

55.    Despite the cease and desist letter and assurance that the product was no longer being distributed, Defendants' unauthorized activities concerning the LTTB Mark continued.

56.    As concerning, in Defendants' Email, Defendants make false statements about the extent of sales of merchandise bearing counterfeits and infringements of the LTTB Mark.

57.    It is clear, that despite receiving and responding to Gorski's cease and desist letter, Defendants' authorized activities concerning the LTTB Mark has and will continue.

58.    On March 31, 2015, counsel for Gorski and Defendants spoke on the telephone in an attempt to resolve this serious issue.  During that telephone call, counsel for Gorski asked several questions regarding the extent of Defendants' illegal activity.  Defendants' counsel said they would speak to their client and get back to counsel for Gorski.

59.    To date, Defendants have failed to provide the requested information despite follow-ups by Gorski's counsel.  Clearly, Defendants are willfully exploiting and trying to hide the true extent of their unauthorized activity concerning the LTTB Mark.

60.    Defendants' continued unauthorized use of the LTTB Mark and its blatant disregard for Gorski's intellectual property rights further evidence that Defendants' infringement of the LTTB Mark is willful.

**C.  Summary of Defendants' Illegal Activities**

61.     Defendants intentionally, maliciously and willfully used in association with its services, manufactured and/or caused to be manufactured, sold, offered for sale, distributed, promoted and advertised products bearing counterfeits of one or more of the LTTB Mark, despite knowledge that such sales were illegal.

62.     Defendants intentionally, maliciously and willfully exploited the LTTB Mark in association with in-store events and promotions despite Gorski's specific refusal to co-brand with Defendants.

63.     Defendants' acts were calculated to confuse and to deceive the public and are performed with full knowledge of Gorski's rights.

64.     Defendants are not now, nor have they ever been, associated, affiliated, connected with, endorsed or sanctioned by Gorski.

65.     Gorski has never authorized or consented in any way to Defendants' use of the LTTB Mark or marks confusingly similar thereto.

66.     Defendants' use of the LTTB Mark or marks substantially indistinguishable and/or confusingly similar thereto in connection with Defendants' products is likely to cause consumers, the public and the trade to erroneously believe that the products provided by Defendants emanate or originate from Gorski, and/or that said products are authorized, sponsored, or approved by Gorski, even though they are not.  This confusion causes irreparable harm to Gorski and weakens and dilutes the distinctive quality of the LTTB Mark.

67.     By using infringements of the LTTB Mark on its goods, Defendants are trading on the goodwill and reputation of Gorski and creating the false impression that Defendants' goods are affiliated with Gorski.

68.    Defendants have been unjustly enriched by illegally using and misappropriating Gorski's intellectual property for its own financial gain.  Furthermore, Defendants have unfairly benefited and profited from Gorski's outstanding reputation for high quality products and her significant advertising and promotion of the LTTB Mark.

69.    Defendants have disparaged Gorski, the LTTB Mark and her products by creating a false association with Gorski, her genuine goods and the LTTB Mark.

70.    Gorski has no control over the nature and quality of the products sold by Defendants, which bear infringements of the LTTB Mark.

71.    Among other things, Defendants' promotion, advertisement and promotion of its goods and services have and will reflect adversely on Gorski as the believed source of origin thereof; hamper continuing efforts by Gorski to protect its outstanding reputation for high quality, originality and distinctive goods; and tarnish the goodwill and demand for genuine products.

72.    Upon information and belief, Defendants have acted with reckless disregard for Gorski's rights and/or was willfully blind in connection with unlawful activities.   Upon information and belief, Defendants have willfully and maliciously engaged in infringing activities.  Therefore, this case constitutes an exceptional case under 15 U.S.C. § 1117(a).

73.    Gorski has suffered irreparable harm and damages as a result of Defendants' conduct.  The injuries and damages sustained by Gorski have been directly and proximately caused by the Defendants' wrongful advertisement, promotion, distribution, sale and offers of sale of its goods bearing infringements of the LTTB Mark.

74.    Gorski has no adequate remedy at law.

75.     Defendants have published and placed into circulation of the general public advertisements that infringe Gorski's intellectual property rights and caused other damages not relating to the infringement.

76.     Defendants' wrongful acts will continue unless enjoined by the Court. Accordingly, Defendants must be restrained and enjoined from any further infringement of the LTTB Mark.

<u>FIRST CLAIM FOR RELIEF</u>
**(Trademark Counterfeiting, 15 U.S.C. § 1114)**

77.     Gorski hereby incorporates by reference all prior allegations as though fully set forth herein.

78.     Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the LTTB Mark on goods covered by registrations for the LTTB Mark.

79.     Defendants have intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale and distribution of goods.

80.     Defendants' use of the LTTB Mark to advertise, promote, offer for sale, distribute and sell products bearing counterfeits was and is without the consent of Gorski.

81.     Defendants' unauthorized use of the LTTB Mark on and in connection with its advertisement, promotion, sale, offering for sale and distribution of products in its stores constitutes Defendants' use of the LTTB Mark in commerce.

82.     Defendants' unauthorized use of the LTTB Mark as set forth above is likely to:

(a)     cause confusion, mistake and deception;

(b)     cause the public to believe that its products are the same as Gorski's products

15

and/or that they are authorized, sponsored or approved by Gorski or that they are affiliated, connected or associated with or in some way related to Gorski; and

(c)      result in Defendants unfairly benefiting from Gorski's advertising and promotion and profiting from the reputation of Gorski and her LTTB Mark all to the substantial and irreparable injury of the public, Gorski and the LTTB Mark and the substantial goodwill represented thereby.

83.      Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

84.      By reason of the foregoing, Defendants are liable to Gorski for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at Gorski's election, an amount representing three (3) times Gorski's damages and/or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

## SECOND CLAIM FOR RELIEF
### Trademark Infringement (15 U.S.C. § 1114)

85.      Gorski hereby incorporates by reference all prior allegations as though fully set forth herein.

86.      Based on Gorski's extensive advertising under the LTTB Mark, her extensive sales and the wide popularity of the LTTB Brand, the LTTB Mark has acquired a secondary meaning so that any product and advertisement bearing such trademark is immediately associated by purchasers and the public as being a product and affiliate of Gorski.

87.      Defendants' activities constitute Defendants' use in commerce of the LTTB Mark.  Defendants used the LTTB Mark in connection with Defendants' sale, offers of sale,

distribution, promotion and advertisement of its goods bearing infringements of the LTTB Trademark.

88.     Defendants have used the LTTB Mark, knowing it is the exclusive property of Gorski, in connection with the sale, offers for sale, distribution, promotion and advertisement of its services and goods bearing infringements of the LTTB Mark.

89.     Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Gorski to use the LTTB Mark to advertise, manufacture, distribute, appraise, offer for sale or sell products bearing the LTTB Mark when Defendants are not so authorized.

90.     Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that they and the products they sell are in some way sponsored, affiliated or associated with Gorski, when they are not.

91.     Defendants' use of the LTTB Mark has been without the consent of Gorski, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed and sold by Defendants are warranted, authorized, sponsored or approved by Gorski when, in fact, they are not.

92.     Defendants' unauthorized use of the LTTB Mark has resulted in Defendants unfairly benefiting from Gorski's advertising and promotion, and profiting from the reputation of Gorski and the LTTB Mark, to the substantial and irreparable injury of the public, Gorski and the LTTB Mark and the substantial goodwill represented thereby.

93.     Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

94.     By reason of the foregoing, Defendants are liable to Gorski for: (a) an amount representing three (3) times Gorski's damages and/or its illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
### (Unfair Competition, False Designation of Origin & False Description, 15 U.S.C. § 1125(a))

95.     Gorski hereby incorporates by reference all prior allegations as though fully set forth herein.

96.     In connection with Defendants' advertisement, promotion, distribution, offers of sale and sale of its goods and services, Defendants have used the LTTB Mark in commerce.

97.     In connection with Defendants' advertisement, promotion, distribution, offers of sale and sales of its goods and services, Defendants have affixed, applied and/or used false designations of origin and false and misleading descriptions and representations, including the LTTB Mark which tends falsely to describe the origin, sponsorship, association or approval by Gorski of the goods Defendants sell.

98.     Defendants have used the LTTB Mark with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Gorski.

99.     Defendants' use of the LTTB Mark on its goods bearing infringements of the LTTB Mark constitutes false descriptions and representations tending falsely to describe or represent Defendants and its products as sponsored, affiliated or associated with Gorski.

100.    Defendants have used the LTTB Mark on its website(s) and on its goods with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon the reputation of Gorski and to improperly appropriate to itself the valuable trademark rights of Gorski.  Defendants' acts constitute unfair competition under federal law.

101.    Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent its products as those of Gorski in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  These acts constitute unfair competition.


## PRAYER FOR RELIEF

**WHEREFORE**, Gorski respectfully requests that the Court order the following relief:

I.    That the Court enter an injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with it be enjoined and restrained from:

(a)    using any reproduction, counterfeit, copy, or colorable imitation of the LTTB Mark to identify any goods not authorized by Gorski;

(b)    engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Gorski's business reputation or weaken the distinctive quality of the LTTB Mark, Gorski's name, reputation or goodwill;

(c)    using a false description or representation including words or other symbols tending to falsely describe or represent its unauthorized goods as being those of Gorski or sponsored by or associated with Gorski and from offering such goods in commerce;

(d)    further infringing the LTTB Mark by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Gorski bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the LTTB Mark;

(e)    using any simulation, reproduction, counterfeit, copy or colorable imitation of the LTTB Mark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Gorski, or to any goods sold, manufactured, sponsored or approved by, or connected with Gorski;

(f)     making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services or products manufactured, distributed, sold or offered for sale, or rented by Defendants is in any way associated or connected with Gorski, or are provided, sold, manufactured, licensed, sponsored, approved or authorized by Gorski;

(g)     engaging in any conduct constituting an infringement of any of the LTTB Mark, of Gorski's rights in, or to use or to exploit, said trademark, or constituting any weakening of Gorski's name, reputation and goodwill;

(h)     using or continuing to use the LTTB Mark or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name, or as a keyword, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods not directly authorized by Gorski;

(i)     secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products which infringe the LTTB Mark; and

(j)     effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (i).

II.     That Defendants, within ten (10) days of judgment, take all steps necessary to remove all text or other media referring to or offering for sale any merchandise bearing the LTTB Mark, or marks substantially indistinguishable therefrom.

III.     That Defendants, within thirty (30) days of judgment, file and serve Gorski with a sworn statement setting forth in detail the manner and form in which they have complied with this injunction pursuant to 15 U.S.C. § 1116(a).

IV.     That Defendants be required to deliver up for destruction to Gorski all unauthorized materials bearing any of the LTTB Mark in association with unauthorized goods and the means for production of same pursuant to 15 U.S.C. § 1118.

V.     That Defendants provide a full accounting of their sales of merchandise bearing counterfeits and infringements of the LTTB Mark.

VI.     Requiring Defendants to pay to Gorski such damages Gorski has sustained as a consequence of its counterfeiting and infringement of the LTTB Mark and to account for all gains, profits and advantages derived by Defendants from the sale of its infringing merchandise bearing the LTTB Mark, and that the award to Gorski be trebled as provided for under 15 U.S.C. § 1117; alternatively, that Gorski be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each trademark that Defendants have willfully counterfeited and infringed.

VII.     Ordering that Gorski recover the costs of this action, together with reasonable attorneys' and pre-judgment interest in accordance with 15 U.S.C. § 1117.

VIII.     Directing that this Court retain jurisdiction of this action for the purpose of enabling Gorski to apply to the Court at any time for such further orders and interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

IX.     Ordering that pursuant to 11 U.S.C. § 523(a)(6), Defendants be prohibited from a discharge under 11 U.S.C. § 727 for malicious, willful and fraudulent injury to Gorski.

X.     Due to the advertising injury caused to Gorski, Defendants be required to deliver to Gorski for destruction, all goods that were being advertised, promoted or offered for sale, as well as any and all catalogs, circulars, or other printed material in its possession or control

displaying or promoting the infringing goods that were or are being advertised, promoted, or offered for sale.

XI.    Awarding to Gorski such other and further relief as the Court may deem just and proper, together with the costs and disbursements that Gorski has incurred in connection with this action.

GIBNEY, ANTHONY & FLAHERTY LLP

Dated: April 17, 2015          By: _____
                                    Walter-Michael Lee (WL 6353)
                                    Maja Szumarska (MS 0208)
                                    665 Fifth Avenue
                                    New York, New York 10022
                                    Telephone: (212) 688-5151
                                    Facsimile: (212) 688-8315
                                    Attorney for Plaintiff

22